# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANGEL TRUJILLO, | ) | 1:04cv5593 DLB |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**BACKGROUND**

Plaintiff Angel Trujillo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income and disability insurance benefits pursuant to Titles XVI and II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On August 31, 2004, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed an application for supplemental security income and disability insurance benefits on July 13, 2001. AR 76-78. He alleged that he had been disabled since March 1, 2001, due to knee pain and diabetes. AR 76, 97. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 59-62, 66, 70. On December 12, 2002, ALJ Rocklin Lyons held a hearing. AR 199-210. On February 21, 2002, ALJ Lyons found that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform his past relevant work or, alternatively, to perform a significant number of jobs in the national economy. AR 23-24. The Appeals Council denied review on February 26, 2004. AR 5-8.

<u>Hearing Testimony</u>

ALJ Lyons held a hearing in Fresno, California on December 12, 2002. AR 199. Plaintiff appeared along with his attorney, Franz Criego. An interpreter also appeared. AR 199.

Plaintiff testified that he was 57 years old at the time of the hearing and has lived in the United States for 30 years. AR 205. He is not a United States citizen and grew up in Mexico. AR 205. He had very little schooling in Mexico. AR 205.

He lives with his wife, who receives Social Security. AR 205. His children no longer live at home. AR 205. He has a driver's license and drove himself to the hearing. AR 206.

He has not done any work in the past 15 years other than "farm labor-type" work. AR 206. He cannot work because when he walks, his legs hurt and burn from his knees down to his heals, and he gets tired. AR 206. He also has diabetes for which he takes medication. AR 206. He has not been hospitalized because of his diabetes and has not had any injuries to his knees or feet. AR 206.

On a typical day, he takes his grandchildren to and from school. AR 208. He doesn't do yard work or help out with housework or cooking. AR 208. He can't do these things because

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

sometimes, when he tries to squat, his knees hurt. AR 208. He goes to church and takes his wife shopping. AR 209.

When questioned by his attorney, Plaintiff explained that his medications are constantly being changed. AR 209. He reported that his condition has remained stable for that past five months. AR 209. In addition to his diabetes, he also has arthritis. AR 210.

Medical Evidence

Plaintiff received treatment from May 2001 through December 2002 for complaints of left knee joint pain and diabetes. AR 137-153, 174-184. On May 4, 2001, an x-ray of Plaintiff's left knee was negative. AR 150.

On May 4, 2002, Plaintiff underwent x-rays of his knees. AR 160. Early degenerative changes were noted in his right knee, and mild degenerative changes were noted in his left knee. AR 160.

On May 20, 2002, Plaintiff saw Jill Ostrem, M.D., for a orthopedic consultation. AR 154. Plaintiff complained of knee problems and joint pain. AR 154. Plaintiff walked without a limp or assistive device. AR 155. Ranges of motion of the spine and upper and lower extremities were within normal limits. AR 155-156. There was no evidence of erythema, swelling or joint effusion in the affected joints, but there was some evidence of crepitus and pain within both knee joints. AR 156. There was a mild decrease to vibratory sense in the distal lower extremities but no difference in temperature or light touch throughout. AR 157. Dr. Ostrem diagnosed Plaintiff with bilateral degenerative joint disease causing arthritis in his knees and a possible right knee meniscal tear. AR 157. She opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, could sit continuously without restriction, could stand and walk for two to four hours out of an eight hour workday, with breaks every 30 minutes. AR 157. Plaintiff would have exertional limitations on climbing, stooping, kneeling, crouching and crawling. AR 158.

On June 3, 2002, State Agency physician Murray Mitts, M.D., completed a Physical Residual Functional Capacity Assessment form. AR 163. He opined that Plaintiff could occasionally lift and carry 50 pounds, 25 pounds frequently, could stand and/or walk about six

hours in an eight hour workday, and sit for about six hours in an eight hour workday. AR 164. Dr. Mitts explained that he disagreed with Dr. Ostrem's standing and walking limitation because it was not supported by the objective medical evidence. AR 169. Dr. Mitts concluded that a medium RFC better supports his functional capabilities. AR 169.

On October 7, 2002, Plaintiff saw Paul Kruper, M.D., and complained of constant pain in his fingers and toes. AR 182. He had good pulses on both feet and no significant variscosities. AR 182. Dr. Kruper diagnosed diabetic peripheral neuropathy. AR 182.

On October 28, 2002, Plaintiff's treating physician Santiago Corpuz, M.D., completed a one-page questionnaire in which he opined that Plaintiff could perform no more than sedentary work. AR 184. Dr. Corpuz explained that Plaintiff has knee pain secondary to arthritis, peripheral neuropathy, and diabetes mellitus under fair to poor control. AR 184. He believed that Plaintiff could sit for two hours at one time and stand and/or walk for less than two hours at one time. AR 184. He could sit for a total of two to three hours during an eight hour period and stand and/or walk about two hours in an eight hour period. AR 184. He opined that he had been disabled since November 2001. AR 184.

<u>ALJ Findings</u>

The ALJ determined that Plaintiff's arthritis of the knees was a severe impairment. AR 24. He also found Plaintiff's allegations regarding his limitations not totally credible. AR 24. He found that Plaintiff retained the RFC to lift and carry 50 pounds occasionally and 25 pounds frequently, to stand and/or walk up to six hours in an eight hour workday, and sit for six hours in an eight hour workday. AR 24. Plaintiff could perform his past work as a grape vine pruner. AR 24. Alternatively, the ALJ determined that could perform the full range of medium work. AR 24.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla,"

4

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of disability; (2) has an impairment or a combination of impairments that is considered "severe"

---

[3] All references are to the 2000 version of the Code of Federal Regulations unless otherwise noted.

(arthritis of the knees) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) can perform his past relevant work as a grape vine pruner; (5) but alternatively, retains the RFC to perform the full range of medium work.  AR 22-24.

Plaintiff argues that (1) the ALJ incorrectly found that Plaintiff could do his past relevant work ("PRW"); (2) the RFC finding was not supported by substantial evidence; and (3) the ALJ was biased.

## **DISCUSSION**

A.   Past Relevant Work

Plaintiff contends that the ALJ failed to develop the record in determining Plaintiff's PRW.  Plaintiff further argues that even if the PRW finding was correct, the ALJ's RFC finding precludes Plaintiff from returning to his PRW.

The Commissioner examines the claimant's "residual functional capacity and the physical and mental demands" of the claimant's past relevant work at step four of the sequential process. 20 C.F.R. § 404.1520(e).  To find that the claimant is not disabled at step four, he must be able to perform either (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001).  Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make the requisite factual findings to support his conclusion. SSR 82-62.

Here, the ALJ determined that Plaintiff's PRW as a grape vine pruner did not, as Plaintiff described it, require any significant lifting, but did require standing and walking throughout the workday.  AR 22, 112.  The ALJ also noted that Plaintiff reported that he cut out old vines with small clippers, that no lifting was done except for carrying water cans weighing about 40 pounds, and that he used a tractor to take out gondola trailers.  AR 22, 53.  The ALJ used the *Dictionary of Occupational Titles* ("*DOT*") to classify Plaintiff's PRW as medium, unskilled work.  AR 22 (relying on *DOT* Code 403.687-010, Farmworker, Fruit II).

Plaintiff first argues that the ALJ improperly played the role of vocational expert in concluding that the job title was in the *DOT* as Code 403.687-010.  Pursuant to SSR 82-62, the ALJ is entitled to rely on Plaintiff's testimony and outside sources, such as the *DOT,* in determining Plaintiff's PRW.  Here, the Plaintiff's own descriptions of his work as a grape vine pruner were sufficient to allow the ALJ to rely on Code 403.687-010, which describes the position as performing "any combination of following tasks involved in planting, cultivating, and harvesting fruits and nuts...prunes trees and bushes, and removes suckers and runners from vines and plants, using tools such as shovels, hoes, tampers, pruning hooks, and shears...May load and unload trucks. May clear and burn roots and brush and gather ladders and containers to clean fields."

Plaintiff next argues that even if the description of Plaintiff's PRW was correct, he could not perform the work based on the ALJ's RFC finding.[4]  The ALJ found that Plaintiff retained the RFC to lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit for six hours in an eight hour workday.  AR 22.  The ALJ concluded that Plaintiff could return to his PRW as grape vine pruner, as he described it, and as it is described in the *DOT* at the unskilled, medium exertional level.  AR 22.

Given the ALJ's RFC finding, however, it is difficult to see how Plaintiff could return to the position of grape vine pruner as he described it.  Plaintiff stated that the job required 10 hours per day of standing and/or walking, and the ALJ acknowledged that the position required standing and walking throughout the workday.  AR 22, 112.  Yet the ALJ determined that Plaintiff could only stand and/or walk for up to six hours in an eight hour work day.  The ALJ therefore incorrectly determined that Plaintiff could perform the job as he previously preformed it.  Insofar as the ALJ determined that Plaintiff could perform the job as it is performed in the national economy, the ALJ should have further examined how Plaintiff's standing and/or walking limitations impacted this finding.[5]

---

[4] Plaintiff also challenges the RFC finding, discussed below.

[5] The instructions on remand will be discussed below.

7

B.     RFC Finding

Plaintiff next argues that the ALJ's RFC finding was not supported by substantial evidence. In support of his argument, he contends that the ALJ erred in rejecting Dr. Ostrem's and the treating physician's standing and/or walking limitation.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. RFC is based on all relevant evidence in the case record, including information about the individual's symptoms and any medical source statements -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources. SSR 96-8p.

Here, the ALJ determined that Plaintiff retained the RFC to lift and carry 50 pounds occasionally, 25 pounds frequently, stand and/or walk up to six hours in an eight hour workday, and sit for six hours in an eight hour workday. AR 22. The ALJ based his finding mainly on the opinion of the State Agency physician who determined that Plaintiff was capable of performing the full range of medium work. AR 22. The ALJ rejected the standing and walking limitations imposed by consultive examiner Dr. Ostrem and treating physician Dr. Corpuz. AR 21-22.

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). Like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456. In *Gallant*, the court held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence" and, therefore, did not support the Commissioner's decision to reject the examining physician's opinion that the claimant was disabled. *Gallant,* 753 F.2d at 1456. Similarly, in *Pitzer*, the court concluded that the nonexamining doctor's opinion "with nothing more" did not constitute substantial evidence. 908 F.2d at 506 n. 4. Where there is an abundance of evidence that supports the ALJ's decision, the ALJ may reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir.1989).

In making his RFC assessment, the ALJ rejected the standing and/or walking limitations set forth by consultive examiner Dr. Ostrem (limiting Plaintiff to standing and/or walking for two to four hours out of an eight hour workday, with breaks every 30 minutes, and finding that Plaintiff would have exertional limitations on climbing, stooping, kneeling, crouching and crawling) and by treating physician Dr. Corpuz (limiting Plaintiff to standing and/or walking for less than two hours at one time, and about two hours in an eight hour period). AR 157-158, 184. In doing so, he gave "greater weight" to the opinion of Dr. Mitts, a non-examining physician. AR 22.

While this may be justified in certain cases, the facts of this case do not support a finding that the ALJ was entitled to reject Dr. Ostrem's and Dr. Corpuz's limitations in favor of a non-

1  examining physician.  There is significant evidence in the record to support the standing and/or
2  walking limitation.  Examinations have revealed decreased range of motion and tenderness.  AR
3  142, 139.  He has been prescribed anti-inflammatory and pain medications.  AR 139, 142.
4  Plaintiff has persistently complained of knee pain since May 2001.  AR 146.  X-rays taken on
5  May 4, 2002, revealed early degenerative changes in Plaintiff's right knee, and mild degenerative
6  changes in his left knee.  AR 160.  Dr. Ostrem's examination revealed evidence of crepitus and
7  pain within both knee joints, and she diagnosed Plaintiff with bilateral degenerative joint disease
8  causing arthritis in his knees.  AR 156-157.  On October 2002, Plaintiff was diagnosed with
9  diabetic peripheral neuropathy and prescribed medication.  AR 182.

    The ALJ's rejection of Dr. Ostrem's and Dr. Corpuz's limitations in favor of the opinion
of a non-examining physician was not supported by substantial evidence.

C.    Bias

    Plaintiff's final and most concerning allegation is that ALJ Lyons was biased.  In support
of his allegation, Plaintiff attaches a letter to the editor of the Fresno Bee written by ALJ Lyons
in 1997.  AR 196.  The letter was published in the April 3, 1997, edition of the Fresno Bee under
the heading "Legalized Theft."  AR 196.  In the letter, ALJ Lyons defends the changes to the
Social Security laws that affect the eligibility requirements for "legalized immigrants" to receive
"SSI welfare payments."  AR 196.  In order to fully appreciate ALJ Lyons' thoughts, the
following reproduction is necessary:

> The money paid to welfare recipients by the government comes out of the pockets of taxpayers.  Any form of welfare is the taking of one person's earned income and giving to another who has earned nothing.  Liberals call this social conscience.  Conservatives call it legalized theft.
>
> Regardless of where you stand on the issue of welfare for our citizens, it is difficult to comprehend a policy which would continue to encourage the world's unemployed and unemployable to immigrate to this country and allow them to drain the resources of our citizens and taxpayers.
>
> For years we have had laws which were not enforced that should have required sponsors of aliens to be financially responsible for those whom they sponsor.
>
> The new laws are not perfect, however they do try to correct some of the failures of the past policy and to lighten the tax burden on those of us who still work and pay taxes.

AR 196.

To demonstrate bias, Plaintiff must demonstrate a conflict of interest or other specific reason for disqualification. *Verduzco v. Apfel*, 188 F.3d 1087, 1089-90 (9th Cir. 1999). Plaintiff must show that the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to render fair judgment. *Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001).

Although the letter was written well before Plaintiff's administrative proceedings, the letter is sufficient to demonstrate ALJ Lyons' clear inability to render a fair judgment. The letter reveals that ALJ Lyons believes that "legal immigrants," such as Plaintiff, a resident alien, "drain the resources of our citizens and tax payers" when given SSI benefits. The letter also demonstrates his disagreement with a welfare state, in general. Indeed, while many people may feel strongly about such topics, few go to such great lengths to write a letter to the editor. ALJ Lyons' disgust is apparent in his conclusion, in which he refers to the "tax burden on those of us who still work and pay taxes." AR 196.

ALJ Lyons is certainly entitled to his beliefs and to express them in any way he chooses. However, when he chooses to express them publicly, his role as an impartial, unbiased ALJ is very much undermined, especially when an individual who fits the profile of the very group of which he complains appears before him. ALJ Lyons' known beliefs, when viewed in light of his unsupported findings described above, lead to a conclusion of bias against Plaintiff.

Perhaps in the future, in the interest of the appearance of fairness, ALJ Lyons should consider recusing himself in proceedings involving the individuals referenced in his letter. It is difficult to image how he could be fair to a claimant whom be believes to be committing "legalized theft."

D.   <u>Remand</u>

In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.

1  Here, the Court finds that additional proceedings can remedy the defects noted and
2  therefore remand is appropriate.  However, because of ALJ Lyon's inability to provide Plaintiff
3  with a fair and impartial hearing, the case is remanded to a DIFFERENT ALJ.  Upon remand, the
4  ALJ shall provide Plaintiff with a fair and proper assessment of his PRW and RFC.

## **CONCLUSION**

6  Based on the foregoing, the case is HEREBY REMANDED to the Secretary pursuant to
7  42 U.S.C. § 405(g) for further proceedings consistent with this decision.  The case must be
8  remanded to a DIFFERENT ALJ.  The Clerk of the Court IS DIRECTED to enter judgment in
9  favor of Plaintiff.

10  IT IS SO ORDERED.

11  Dated:    **June 3, 2005**                    **/s/ Dennis L. Beck**
         3b142a                             UNITED STATES MAGISTRATE JUDGE